**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **OSCAR SANTOS,** *et. al.* | ) | |
| | ) | |
| ***On behalf of themselves and*** | ) | |
| ***all others similarly situated*** | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO.: **8:20-cv-02737-PX** |
| | ) | |
| v. | ) | |
| | ) | |
| **E&R SERVICES, INC,** *et. al.* | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE
ACTION AND FOR APPROVAL OF AND FACILITATION OF NOTICE TO
POTENTIAL CLASS MEMBERS**

Plaintiffs, by and through undersigned counsel, move to conditionally certify a collective action pursuant to the Federal Fair Labor Standards Act ("FLSA"), and for approval and facilitation of notice to potential class members, and for good cause, state as follows:

## I.    INTRODUCTION

This motion asks the Court to certify Counts I (overtime) and II (minimum wage) as a collective action under the Fair Labor Standard Act.  As shown below, E&R Services, Inc. ("E&R"):

- Does not pay workers for all hours worked each day;

- Does not pay workers for all recorded hours each week; and

- Does not pay time and a half for overtime.

1

II.     FACTS

E&R is a construction contractor located in Lanham, Maryland.  (Hugo Flores Deposition [hereafter Exhibit A] 18:18-18:20).   It is owned by Emilio Rodriguez, Jr. It has been in business since 2002.   It employs more than 75 individuals: approximately ten office employees; approximately twelve workers in its residential division; and about sixty employees in its commercial construction division.   Hugo Flores has managed E&R's office since 2008.  (Ex. A 10:1-10:12; 19:3-19:22; 19:20-20:2; 24:13-25:4;)).

This case is about the compliment of sixty workers who work in the commercial construction division (though there are more than sixty workers in the putative class, due to worker turnover).    These workers perform the back-breaking labor required to build and maintain our streets and sidewalks.  Most of this work is performed for state and local governments, like the City of Rockville, Montgomery County, Prince George's County, and the State Highway Administration.  Some of the work is on prevailing wage jobs, which means the wage rate is set by the government.  Among these sixty workers there are several job classifications, such as machine operator, concrete finisher, and laborer. On every job, all of the job classifications work together, shoulder to shoulder.  (Ex. A 20:4-20:14; 21:2-21:11; 21:16-23:9; 116:1-117:11; 118:6-118:14; 120:13-121:12).

Plaintiff Oscar Santos worked for defendants from September 2019 to August 2020. Mr. Santos performed physical work for defendants, operated heavy machinery, and performed excavation.  Defendants paid Mr. Santos between $27 and $28 per hour.  Declaration of Oscar Santos, attached as Exhibit B.

Plaintiff Otoniel Morales for defendants from approximately October 2016 to July 2017 and then again from February 2018 to June 2019. Mr. Morales was a machine operator responsible

for removing old cement and replacing it with new cement.  Defendants paid him between $23 and $26 per hour.  Declaration of Otoniel Morales, attached as Exhibit C.

Plaintiff Flores worked for defendants from approximately June 2019 to August 2020 as a laborer/finisher. Mr. Morales shoveled asphalt and operated a rolling machine.  Defendants paid him $16 per hour.  Declaration of Isidro Flores, attached as Exhibit D

Plaintiff Oscar Garcia worked for defendants from 2017 to April 2020.  Mr. Garcia was a machine operator, performing tasks such as power washing and restoring masonry.  Defendants paid him between $20 and $23 per hour.  Declaration of Oscar Garcia, attached as Exhibit E.

 E&R treats all hourly employees in the commercial division exactly the same when it comes to wages, hours and payroll.  (Ex. A 34:4-34:15; 112:22-113:3; 121:18-122:7).

E&R fills out time sheets for their workers; the workers do not enter their own time.  (Ex. A 34:9-34:17).  E&R shorts workers between 15 and 60 minutes nearly every working *day*.  It does this by rounding down to the nearest whole hour.

For example, Plaintiffs Oscar Santos and Isidro Flores worked on September 16, 2019, along with seven other hourly paid employees.  E&R recorded that these nine workers began their workday at 6:50 a.m. and finished their workday 5:35 p.m.  E&R's records show that these workers that did not take a lunch break.  Thus, these nine workers worked 10 hours and forty-five minutes that day.   But E&R's timesheets show that it credited the plaintiffs for only 10 hours that day.  It rounded their time down to the nearest whole hour.   E&R shorted every member of this work crew by forty-five minutes.  E&R shaved time from every worker for every day between September 16, 2019 and September 21, 2019.[1] Exhibit F

---

[1]     Defendants may claim the plaintiffs were given time for lunch or other breaks.  Defendants' own documents show their workers often were given no time for lunch.  E.g., Exhibit F (indicating "No" in columns labeled lunch).  Plaintiffs indicate they were generally given less than fifteen or thirty minutes for lunch. Exhibits B, C, D and E.

E&R's daily shaving of time is long-term and pervasive. It applies to nearly every employee in the commercial division. (Ex. A, 42:19-42:22); see also, e.g., Exhibit G (indicating no lunch break, shaving twenty to thirty minutes each day during the week of May 21, 2020 from the time recorded for six to eight workers); Exhibit H (indicating no lunch break, shaving time during the week of March 21, 2020 for six to seven workers); Exhibit I (indicating no lunch break, shaving ten to thirty-five minutes during the week of August 18, 2019 for six or seven workers); Exhibit J (indicating no lunch break, shaving up to forty-five during the from six or seven workers during the week of September 28, 2019); Exhibit K (indicating no lunch break, shaving up to forty minutes every day the week of June 6, 2020 for six to seven workers); Exhibit L (indicating no lunch break, shaving time up to thirty minutes each day during the week of March 3, 2020 for six eight workers).

E&R compounds this violation by shorting the hours that it does record each *week*. For example, during the week of September 16, 2019, E&R recorded that Plaintiff Oscar Santos worked 58 hours. Exhibit F. E&R only paid Mr. Santos for 57 hours that week. (Ex. A 55:2-55:17; Exhibit M, check for $1539, which divided by a $27 hourly rate equals 57 hours). Likewise, E&R recorded that Plaintiff Otoniel Morales worked 55 hours during the week of July 9, 2018, but only paid him for 50.67 hours. (Ex. A 113:9-114:4; Exhibit N, Exhibit O Hugo Flores Depo Exhibit 14). E&R recorded fifty-hours for Isidro Flores but only paid him for 51 hours.[2] (Ex. A 125:15-126:16)

E&R does not pay its workers time and a half for more than forty hours in a week. For

---

[2] E&R accomplishes this weekly time-shaving on weekly spreadsheets. These weekly spreadsheets are highly probative of the plaintiffs' claims. As the Court is aware, defendants have only produced a handful of these spreadsheets despite their being responsive to plaintiffs document requests.

example, the company often pays employees a day rate and does not calculate an overtime premium if an employee works more than forty hours in a week.  (Ex. A 98:16-99:3; Exhibit P, Flores Depo. Ex. 10 (showing E&R paying day rates to numerous workers but not paying an overtime premium when the employee reach forty hours in a week).  Or, it simply pays straight time for hours worked over forty.  (Ex. A 126:10-126:13).

E&R's practice of not paying time and half for overtime is also pervasive.  For example, E&R's records show that Mr. Santos worked more than forty hours for the weeks represented by the checks issued on the following dates:  September 24, 2019 ($1539/$27 per hour equals fifty-seven hours)[3]; October 1, 2019 ($1566/$27 equals fifty-eight hours); October 8, 2019 ($1539/$27 per hour equals fifty-seven hours); October 15, 2019 ($1458/$27 equals fifty-four hours); October 22, 2019 ($1431/$27 equals 53 hours); October 29, 2019 ($1107/$27 equals 41 hours); November 18, 2019 (($1107/$27 equals 41 hours); November 26, 2019 ($1539/$27 per hour equals fifty-seven hours);   December 3, 2019 ($1282.50/$27 equals 47.5 hours); December 16, 2019 (1,134/$27 equals 42 hours). Exhibit Q.  E&R paid Mr. Santos only straight time and did not pay him time and a half for overtime.

The same is true for Plaintiff Morales.  His hourly rate was usually $24 or $26 per hour. Hence, in every week that he earned more than $960 ($24* 40 hours) or $1040 ($26*40 hours), E&R should have paid him overtime.  E&R's records show that it paid him only straight time for the weeks represented by the checks issued on the following dates: March 27, 2018 ($1,236/$24 equals 51.5 hours); July 11, 2017 ($1,104/$24 equals 46 hours); March 30, 2018 ($1,104/$24 equals 46 hours); August 21, 2018 ($1248/$24 equals fifty-two hours); August 21, 2018

---

[3]      E&R's weekly spreadsheets, had they been produced, would show each employee's hourly rate and the number of hours they worked. Plaintiffs instead have had to "reverse engineer" how they were by dividing their weekly pay by their hour rates to arrive at the number of hours worked.

($1287/$26 equals 49.5 hours); September 4, 2018 ($1300/$26 equals fifty hours); October 16, 2018, October 22, 2018, and October 30, 2018 ($1,196/$26 equals 46 hours). Exhibit R.

Likewise, E&R did not pay overtime to Plaintiff Flores in the following weeks represented by checks issued on the following dates: August 13, 2019 ($816/$16 = 51 hours); August 19, 2019 ($880/$16= 55 hours); September 3, 2019 ($752/$16 = 47 hours).  Exhibit S

Finally, E&R did not pay Plaintiff Garcia time and a half for overtime in following weeks represented by the checks issued on the following dates.  April 10, 2018 ($920/$20 equals 46 hours); April 17, 2018 ($860/$20 equals 43 hours); April 24, 2018 $1220/$20 equals 61 hours); May 1, 2018 ($920/$20 equals 46 hours); May 8, 2018($860/$20 equals 43 hours); May 15, 2018 ($1020/$20 equals 51 hours); May 22, 2018 ($1,180/$20 equals 59 hours); June 5, 2018 ($940/$20 equals 47 hours); June 14, 2018 ($1165.50/21 equals 55.5 hours); June 16, 2018, ($924/$21 equals 44 hours); July 2, 2018 ($1,218/21 equals 58 hours); July 24, 2018 ($1396.5/$21 equals 66.5 hours worked; July 31, 2018 ($1,018.5/$21 equals 48.5 hours worked); August 14, 2018 ($892.50/$21 equals 42.5 hours); July 24, 2018 ($1,176/$21 equals 56 hours); August 28, 2018 ($1,396.50/$21 equals 66.5 hours); September 4, 2018 ($1,155/$21 equals 55 hours); September 11, 2019 ($1,386/421 equals 66 hours); September 18, 2018 ($987/$21 equals 47 hours); October 2, 2018 ($1,050/$21 equals 50 hours); October 5, 2018 ($1,155/$21 equals 55 hours); October 16, 2018 ($1,155/$21 equals 55 hours);October 22, 2018 ($934.50/21 equals 44.5 hours); October 30, 2018 $1039,5/$21 equals 49.5 hours); November 7, 2018 ($987/$21 equals 47 hours); December 12, 2018 ($871.50/$21 equals 41.5 hours); December 25, 2018 ($924/21 equals 44 hours).  Exhibit T.

### III.    ARGUMENT

#### A.  The FLSA Provides For Certification Of A Collective Class of Persons Similarly Situated.

Plaintiff seeks to conditionally certify Count I and II of the Complaint as a collective action pursuant to the FLSA. "'Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C. § 216(b).'" *Shaver v. Gills Eldersburg, Inc.*, ELH 14-3977, 2015 WL 5897463, *6 (D. Md. Oct. 6, 2015) (*quoting Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 771 (D. Md. 2008)).

This certification is permitted under 29 U.S.C. § 216(b) of the FLSA which provides:

> An action to recover the liability prescribed [by the FLSA] may be maintained against any employer . . . by any one of more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall  be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. …
>
> 29  U.S.C. § 216(b)

This Court has stressed that "[w]hether to certify a collective action is a decision within the discretion of the district court and should be made with consideration given to the remedial purposes of the FLSA." *Feehley v. Sabatino's, Inc.*, 2018 WL 2972475, *2 (D. Md. Jun. 13, 2018) (*citing Quinteros*, 532 F. Supp. 2d at 771); *see also Mancia et al. v. Mayflower Textile Services Co.*, 2008 WL 4735344, *3 (D. Md. Oct. 14, 2008) (Blake, J.).

"[T]he court makes a threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to putative class members would be appropriate." *Mendoza v. Mo's Fisherman Exchange, Inc.*, No. ELH-15-1427, 2016 WL 3440007, at *11 (D. Md. Jun. 22, 2016) (*quoting Butler v.*

*DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012); *see also Williams et al. v. Long (d/b/a Charm City Cupcakes)*, 585 F.Supp.2d 679, 684 (D. Md. 2008) ("The paramount issue in determining the appropriateness of a conditional certification is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'") (Grimm, J.).

> i.      **The Meaning of "Similarly Situated"**

Although the U.S. Court of Appeals for the Fourth Circuit has yet to define the term "similarly situated" in the context of an FLSA collective action, "[t]his Court has held that a group of FLSA plaintiffs is similarly situated if they can show that they were victims of a common policy, scheme, or plan that violated the law." *Ware v. Aus, Inc.*, 2017 WL 1354143, *2 (D. Md. Apr. 13, 2017) (*citing Mancia*, 2008 WL 473533, at *3 (citing cases)); *Marroquin*, 236 F.R.D. at 259-60 (*citing Realite v. Ark Restaurants Corp.*, 7 F.Supp.2d 303, 307-08 (S.D.N.Y. 1998) (Sotomayor, J.)). In *Realite*, then-District Court Judge Sotomayor stressed that "[t]he burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'" *Realite*, 7 F.Supp.2d at 306.

Accordingly, Plaintiffs here must make a "preliminary factual showing indicating a similarly situated group of potential plaintiffs exists." *Williams*, 585 F.Supp.2d at 684. "'This would include factual evidence by affidavits or *other means*, but mere allegations in the complaint would not suffice.'" *Id.* (italics in original) (citations omitted). "This showing must consist of more than 'vague allegations' with 'meager factual support,' "but it need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists." *Mancia*, 2008 WL 473533, at *2. "[P]laintiffs generally must make 'only a relatively modest factual showing' as to the existence of a common policy, scheme, or plan that violates the FLSA." *Aytch v. Trulife Health Services, LLC*, ELH-17-2769 2018 WL 1784461, *4 (D. Md.

8

Apr. 12, 2018) (*quoting Butler*, 876 F. Supp, 2d at 566); *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007) (noting the "minimal evidentiary showing" that a plaintiff must make in order to obtain conditional certification of a collective action); *see also Shaver v. Gills Eldersburg, Inc.*, ELH 14-3977, 2015 WL 5897463, *6 (D. Md. Oct. 6, 2015) ("plaintiff need only make a 'relatively modest factual showing'… .").

## B. There Exists a Two-Tiered Approach That Courts Use to Administer Properly Filed § 216(b) Cases.

There is a two-tiered or two step approach that Courts take in certification of a § 216(b) opt-in class. *See, e.g.*, *Mendoza*, *supra* at *11 ("But, generally, when assessing whether to certify a collective action pursuant to the FLSA, district courts in this circuit adhere to a two-stage process.") (citing cases); *see also Dominguez et al. v. Don Pedro Restaurant, et al.*, 2007 WL 271567, *2 (N.D. Ind. Jan. 25, 2007); *Bell et al. v. Mynt Entertainment, LLC, et al.*, 223 F.R.D. 680, 683 (S.D. Fla. 2004).

> First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective action on a provisional basis. Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216.

*Ware v. AUS, Inc., Civil Action No. RDB-16-3909, 2017 U.S. Dist. LEXIS 56495 (D. Md. Apr. 13, 2017)* *2 (*citing Rawls*, 244 F.R.D. at 300); *see also Goldman et al. v. RadioShack Corp.*, 2003 U.S. Dist. LEXIS 7611, at *19 (E.D. Pa. April 16, 2003) ("The first tier of the test occurs at the beginning of the case when the court has minimal evidence. At this stage, the court may only conditionally certify the class so that the Plaintiff may send notice to the potential representative action members. 'A court may conditionally certify the class for purpose of notice and discovery under a comparatively liberal standard, i.e., by determining that the members of the putative class 'were together the victims of a single decision, policy or plan.' The conditional certification is by

no means final.") (citations omitted).

In the first stage, i.e., the "notice stage," a merits-based review is not appropriate. *See id.* at *24-25; *Knox v. Hooper's Crab House, Inc.*, 2018 WL 723964, at *2 (D. Md. Feb. 6, 2018) ("To meet their burden at this stage, the plaintiffs must make 'a relatively modest factual showing.'") (*quoting Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014)); *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 262 (S.D.N.Y. 1997) (merits of the case are irrelevant to "similarly situated" test). "Because this step occurs early in a case, the court accepts as true the plaintiffs' allegations and does not reach the merits of the plaintiff's FLSA claims." *Dominguez*, 2007 WL 271567, at *2 (*citing Realite, supra*, at 307 ("Even if plaintiffs' claims turn out to be meritless or, in fact, all plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.")). "A plaintiff must only present 'a similar legal issue as to coverage, exemption, or nonpayment o[f] minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions… .'" *Shaver* 2015 WL 5897463, *9 (*quoting De LunaGuerrero v. N.C. Grower's Ass'n, Inc.*, 338 F.Supp.2d 649, 654 (E.D.N.C. 2004)) (alterations in original). "Indeed, '[b]ecause the court has minimal evidence [at this stage], this determination is made using a fairly lenient standard and typically results in conditional certification of a representative class.'"  *Mendoza*, 2016 WL 3440007 at *12 (*quoting Calderon v. Geico General Ins. Co.*, 2011 WL 98197, at *4 (D. Md. Jan. 12, 2011)).

The second step in the certification of a collective action is usually conducted after the completion of class-related discovery. *Butler*, 876 F.Supp.2d at 566 ("When deciding whether to certify a collective action pursuant to the FLSA, courts generally follow a two-stage process. In the first stage, commonly referred to as the notice stage, the court makes a 'threshold

determination of 'whether the plaintiffs have demonstrated that potential class members are similarly situated,' such that court-facilitated notice to putative class members would be appropriate.' In the second stage, following the close of discovery, the court conducts a 'more stringent inquiry' to determine whether the plaintiffs are in fact 'similarly situated,' as required by § 216(b).") (citations omitted); *Mueller v. CBS, Inc.*, 201 F.R.D. 425, 428 (W.D. Pa. 2001). During the second step, the court conducts a specific factual analysis of each employee's claim to ensure that each claimant is an appropriate party. *Mueller*, 201 F.R.D. at 428. Plaintiff bears the burden of showing he is similarly situated to the remainder of the proposed class. *Mendoza*, 2016 WL 3440007 at *11. "If the court then decides that the plaintiffs are not 'similarly situated,' the FLSA representative action will be decertified and the plaintiffs will proceed with individual claims." *Goldman*, 2003 U.S. Dist. LEXIS 7611, * 21.

## C.   Conditional Certification (Notice Stage Certification) Is Warranted in this Case.

Plaintiffs clearly demonstrate that the proposed class of workers (workers in the defendant's commercial construction division) are similarly situated, insofar as they are all treated the same for time-recording, wage and payroll purposes, all perform commercial construction, all work side-by-side, and all are subject to the defendants' unlawful wage practices. Certification is warranted in this case.

### i.   This Is An Appropriate Case For the Court to Conditionally Certify As A Collective Action Under the FLSA, And to Facilitate Court Notice to Hourly Paid Workers in E&R's Commercial Construction Division.

The next issue is whether this case is appropriate for conditional certification of an FLSA collective action, and Court facilitated notice. *See Mancia*, 2008 WL 4735344, at *3 ("The relevant questions for FLSA collective action certification, then, are whether the plaintiffs are 'similarly situated' and, if so, whether court facilitated notice is needed to enable additional prospective

11

plaintiffs to opt into the lawsuit."). Generally speaking, when a plaintiff demonstrates that he/she is similarly situated to a group of other employees, the case is appropriate for conditional certification. *Essame v. SSC Laurel Operating Co. LLC*, 847 F.Supp.2d 821, 827 (D. Md. 2012) ("The touchstone in determining whether it is appropriate for courts to exercise this discretion "is whether Plaintiffs have demonstrated that potential class members are 'similarly situated.'" (citation omitted); *Williams*, 585 F.Supp.2d at 684 ("The paramount issue in determining the appropriateness of a conditional class certification is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'").

But there are additional factors, aside from the similarly situated analysis, weighing in favor of determining that this case is appropriate for conditional certification. This is clearly an appropriate case for conditional certification and Court facilitated notice, for the following reasons.

First, the Defendants have employed over the last three years well over 60 workers in their commercial construction division, including the Plaintiffs. This Court has relied on the existence of a similar number of workers as justification for conditional certification. *See Mancia*, 2008 WL 4735344, at *3 ("this facility employs between 60 and 100 workers, many of whom may be unaware of this lawsuit, and there may be as-yet-unidentified workers who previously worked at the facility with similar claims"); *Marroquin*, 236 F.R.D. at 260 ("The fact that there are, at least, approximately 113 unidentified co-workers who were in this same position weighs heavily in favor of allowing this case to proceed as a collective action and allowing a notice plan to move forward.").

Second, due to employee turnover, there are likely a large number of employees who have no contact with the Plaintiffs. Thus, conditional certification and Court facilitated notice is critically important so that employees may learn of their potential rights.

Third, the unpaid wages in this case are not so large and substantial that individuals with sufficient information, might have a personal incentive to bring their claims for unpaid minimum wages and overtime, on an individual basis. Courts have considered the amount of unpaid wages as a factor in granting conditional certification and court notice. *See Higueros et al. v. New York State Catholic Health Plan, Inc.*, 2009 WL 3463765, *2 (E.D.N.Y. Oct. 21, 2009)("The amount involved in many of these actions is not substantial and, therefore, there often would be no incentive to bring such an action without permitting similarly situated employees to band together in order to assert their collective rights."); Accord ECF 36 (defense counsel stating that the plaintiffs' individual cases "belong[] in the District Court of Maryland and not in a United States District Court."); ECF 27 (defense counsel stating, "Wherefore, at best, this is a relatively small overtime pay case.")

Conditionally certifying this case as a collective action, particularly given the common issues of facts and law presented in this case, would both further the remedial purposes of the FLSA, and would be beneficial from a judicial efficiency perspective.

### ii.   The Court Should Approve Plaintiff's Plan for Notifying Potential Opt-In Plaintiffs.

Having demonstrated that Plaintiffs are similarly situated to other workers in defendants' commercial construction division, and having further demonstrated that this case is appropriate for conditional certification and court facilitated notice, Plaintiff requests that the Court facilitate notice to all of the potential Plaintiffs that could be impacted by this case. This Court has observed that Court facilitate notice "may be especially important" in cases involving workers who are traditionally low-paid and subject to exploitation. *See Marroquin*, 236 F.R.D. at 259 n.9.

Accordingly, Plaintiffs submit the following notice plan, which is tailored to the worker population at issue, the important role that the FLSA plays in economic relations, and the needs

13

of this case.

### i. Proposed Notices

First, Plaintiffs requests that the Court approve the attached proposed Notice, to be signed by the Court. (Ex. U). This Notice is similar to the Notice approved by this Court in *Williams, et al. v. ezStorage Corp., et al.*, 2011 WL 1539941, *4 (D. Md. April 21, 2011) (Bennett, J.), which also had "off-the-clock" or time-shaving allegations. The proposed Notice is necessary in order to completely inform potential Plaintiffs as to the nature of this suit, and what might be available to the recovering Plaintiffs.  Plantiffs propose that the Notice be translated into Spanish given that Spanish is the first language of many workers in the putative class and the language used in E&R's office.

### ii. Production of Contact Information

Second, Plaintiffs request that the Court order the Defendants to produce, within 7 days of the Court's Order, a computer readable list of all workers in defendants' commercial construction division who have worked in the three years preceding the filing of this Motion. This information should include the first, middle (if applicable), and last name of each person who held such a position, the position(s) held, all mailing addresses, all email addresses, all cell telephone numbers, and the dates of employment.

### iii. Notice Methods

Third, the Plaintiff requests that the Court approve the following methods of notifying potential Plaintiffs: (a) U.S. Mail; (b) email; and (c) automated call or text message to all workers whose notice is sent by U.S. Mail and returned as undeliverable.

As to the first method, U.S. mailing, Plaintiff's counsel will handle the mailing of the Court notice and will collect and file all opt-in notices received from persons with claims against

Defendants, and prior to filing a notice, will make a preliminary investigation of the claim in compliance with Fed.R.Civ.P. 11.

With respect to the second method, the notice will be sent by email simultaneously with the U.S. mailing. Plaintiff's counsel will also handle the emailing of the Court notice and similarly collect and file all opt-in notices received from persons with claims against Defendants.  The proposed email will state (in English and Spanish):

> You are receiving this email because you worked for E&R Services, Inc. The United States District Court for the District of Maryland has issued an Order conditionally certifying a collective action under the Fair Labor Standards Act. The details of that Order and its accompanying Opt-In Notice are attached for you review.

The third method involves dissemination automated call or text message by Plaintiff's counsel, notifying workers of the existence of this lawsuit and their right (if interested) to receive a Class Notice and Opt-In Notice. Text messages now represent a very common method of communication. Courts have now routinely begun allowing text messaging of the Court's Notice. *See, e.g., Landry et al. v. Swire Oilfield Services, LLC*, 252 F.Supp.3d 1079, 1129-30 (D. N.M 2017) (Recognizing that similar to email, Courts have authorized notice by text message) *Calvillo v. Bull Rogers, Inc.*, 267 F.Supp.3d 1307, 1315 (D.N.M. 2017) ("Courts have recognize that notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is aware from home or has moved."); *Bhumithanarn v. 22 Noodle Market Corp.*, 2015 WL 4240985, *5 (S.D.N.Y. July 13, 2015) ("given the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action."). Notice by text message will be a secondary method of notifying potential Plaintiffs, and will only be used when

15

mailed notices, due to non-delivery, are returned as undeliverable and produced to Defendants. *Cf.*

*Houston v. URS Corp.*, 591 F.Supp.2d 827, 836 n.9 (E.D. Va. 2008) (upon presentation of returned

mail, telephone number to be provided so that new address may be obtained). Upon presentation

of each piece of returned mail, Defendants will then promptly furnish a telephone number to

Plaintiff's counsel within three (3) business days. The automated call or text message will

generally provide the same basic information as set forth by email and/or social media, and shall

state:

> Have you worked in the commercial division of E&R Services, Inc.?
> A Federal Judge has conditionally certified a lawsuit seeking unpaid
> wages under the Federal Fair Labor Standards Act. No judicial
> determination has been made on the merits of this case. If you
> worked there within the last three years, you may contact us for a
> copy of the Class Notice and related document. The Court has
> authorized this [automated call or text]. James Rubin, Attorney,
> Admitted Maryland/District of Columbia/ 301-760-7914.

In *Irvine v. Destination Wild Dunes Manag., Inc.*, 132 F.Supp.3d 707, 711 (D. S.C. 2015), the

District Court approved dissemination of a notice of conditional certification via text message after

the plaintiff had "proposed a shortened version of the notice … ." *Id*. at 711 n.1. The District Court

found the text message fair, appropriate, and approved "it as written." *Id*.

### iv. Opt-In Method

The Plaintiffs request that the Court approve a 75-day period in which potential Plaintiffs

may opt-in to this case, from the date of the U.S. mailing (a date to be certified by Plaintiff's

counsel). A proposed Opt-In Notice is attached hereto, and Plaintiff requests that the Court

approve the form to be used in both English and Spanish. (Exhibit V).

### IV. Conclusion

Given the record presently before this Court, including the Declarations of the Plaintiffs

and accompanying evidence to substantiate Plaintiffs' allegations, it is clear that Plaintiffs have made a sufficient factual showing to satisfy the similarly situated requirement As a consequence, Plaintiff requests that the instant Motion To Conditionally Certify A Fair Labor Standards Act Collective Action And For Approval Of And Facilitation Of Notice To Potential Class Members be granted, and Plaintiff requests that the Court approve the attached notices to potential members of this collective action.

Respectfully submitted,

____/s/_____
James E. Rubin
The Rubin Employment Law Firm, P.C.
600 Jefferson Plaza, Suite 204
Rockville, MD 208502
Telephone: (301) 760-7914
jrubin@rubinemploymentlaw.com


Aaron Z. Uslan
Law Office of Aaron Z. Uslan
5034 Wisconsin Ave NW, Ste 250
Washington, DC 20016
(202) 350-2900
aaron@aaronuslanlaw.com

Attorneys for Plaintiffs

17

**<u>CERTIFICATE OF SERVICE</u>**

 I HEREBY CERTIFY that a copy of the foregoing motion was served upon the following

counsel this 4th day of June, 2021, via the Court's CM/ECF system:

        Dmitri A. Chernov, Esq.
        11821 Parklawn Drive
        Suite 110
        Rockville, Maryland 20852

        __/s/_____
        James Rubin