**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| OSCAR SANTOS, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: DLB-20-2737 |
| E&R SERVICES, INC., *et al.*, | * | |
| Defendants. | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

**MEMORANDUM OPINION**

Plaintiffs Oscar Santos, Otoniel Morales, and Isidro Flores filed this lawsuit on behalf of themselves and other similarly situated individuals against their former employers, E&R Services, Inc. and Emilio Rodriguez (together, "E&R"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and related state laws based on the failure to pay overtime and minimum wages.  ECF 1.  Plaintiffs, former construction workers for E&R, a residential and commercial construction company, assert the FLSA claims as a collective action under 29 U.S.C. § 216(b), and they have moved for court-approved notice to potential plaintiffs and conditional certification of the action.  ECF 38.  Plaintiffs also filed a motion for leave to amend the complaint. ECF 51.   Defendants oppose both motions, which the parties fully briefed.  ECF 47, 49, 58, 60. In addition, plaintiffs filed a motion to amend the scheduling order and a request to compel defendants' responses to their requests for time and payment records for four opt-in plaintiffs. ECF 48, 50.  Defendants opposed the request for discovery.  ECF 53.  Finally, plaintiffs filed a motion for equitable tolling, ECF 59, which is unopposed.  A hearing on the pending motions is not necessary.  *See* Loc. R. 105.6.

Because plaintiffs have made a threshold showing that potential plaintiffs are similarly situated employees, their motion for court-approved notice and conditional certification is granted. Additionally, plaintiffs' motions for leave to file an amended complaint, to amend the scheduling order, and to compel discovery are granted, and plaintiffs' motion for equitable tolling is granted in part.

## I.   Factual Background[1]

Between Fall 2016 and Summer 2020, plaintiffs Santos, Morales, and Flores worked for E&R Services, Inc., a residential and commercial construction company in Prince George's County, Maryland.[2]   Emilio Rodriguez is the chief executive officer and owner of the company. The three plaintiffs performed different roles for E&R in its commercial construction division. Santos excavated soil and rocks with heavy machinery to prepare sites for residential, commercial, and industrial building and infrastructure projects.   Morales operated a machine to remove and replace cement.   Flores shoveled and finished asphalt and cement.

Plaintiffs assert that defendants paid them and other similarly situated employees by the hour.   They claim E&R did not pay its hourly employees for all hours worked or one-and-one-half times the employees' hourly rates for all overtime hours worked.   Plaintiffs allege that defendants "required them [and those similarly situated] to work off the clock."   They claim these practices "applie[d] to all, or nearly all, of its construction workers."   In support, they produced time sheets

---

[1] Unless otherwise noted, the factual background is based on plaintiffs' allegations in their complaint and their declarations submitted in support of their motion for conditional certification. *See* ECF 1; ECF 38-2 (Santos Decl.); ECF 38-3 (Morales Decl.); ECF 38-4 (Flores Decl.); *see also* ECF 38-5 (Garcia Decl.).

[2] Santos worked for defendants from September 2019 to August 2020; Morales worked for them from October 2016 to July 2017 and February 2018 to June 2019; and Flores worked for them from June 2019 to August 2020.

that defendants completed on behalf of the workers on which defendants "round[ed] down to the nearest whole hour," thereby shaving hours and "short[ing] workers between 15 and 60 minutes nearly every working day." ECF 38, at 3–4. Plaintiffs note the time sheets reflect that the workers did not take lunch breaks, which they claim entitled them to pay for every hour on the job. *Id.* In addition, plaintiffs contend that defendants paid them for fewer hours than the hours recorded on their time sheets. *Id.* at 4 (comparing, for example, a September 16, 2019 time sheet showing Santos worked 58 hours with a check showing he was paid $27/hour for only 57 hours). Daily timecards reflect that plaintiffs and other employees routinely worked the same hours as each other, were not paid for all the hours they worked each day, and worked more than 40 hours per week. ECF 38-6 – 38-12. Office Manager Hugo Flores testified that defendants treated all hourly construction workers the same for payroll purposes and hours calculations. ECF 38-1, at 104:3–20, 112:22 – 113:3, 121:18 – 122:7. Plaintiffs seek conditional certification of the collective action on behalf of "hourly-paid workers that perform[ed] construction work" for E&R in its "commercial construction division for the three-year period preceding the entry of this [conditional certification] Order . . . ." ECF 49, at 8, 11; *see* ECF 38-23 (proposed order).

## II.     Motion for Conditional Certification

### A.  The FLSA Collective Action Certification Process

The FLSA generally requires that non-exempt employees receive at least the federal minimum hourly wage and, for those who work more than 40 hours in a week, overtime pay at the rate of one-and-one-half times their regular pay rate. 29 U.S.C. §§ 206(a), 207(a); *see Encino Motorcars, LLC v. Navarro*, --- U.S. ----, 138 S. Ct. 1134, 1138 (2018); *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1032 (4th Cir. 2020). Under the FLSA, an employee may file an action against an employer on his or her own behalf and on behalf of "other employees similarly

situated." 29 U.S.C. § 216(b); *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 757–58 (4th Cir. 2011). The statute establishes an opt-in scheme for "similarly situated" employees whereby they must notify the court of their intention to become a party to the action. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). If employees choose to pursue a collective action, as is the case here, they may seek court-approved notice to inform similarly situated employees that they may join the litigation. *See Hoffman–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989) (considering § 216(b) in context of the Age Discrimination in Employment Act). "[D]istrict courts have discretion, in appropriate cases, to . . . facilitate[e] notice to potential plaintiffs" and to allow claims to proceed as a collective action. *See Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) (*quoting Hoffman–La Roche*, 493 U.S. at 169); *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010).

When assessing whether an FLSA claim should proceed as a collective action, all district courts in this circuit traditionally have employed a two-stage process. *See Lancaster v. FQSR*, No. TDC-19-2632, 2020 WL 5500227, at *2 (D. Md. Sept. 11, 2020); *Syrja*, 756 F. Supp. 2d at 686; *Stacy v. Jennmar Corp. of Va., Inc.*, No. 1:21CV00015, 2021 WL 4787278, at *2 (W.D. Va. Oct. 14, 2021); *Mebane v. GKN Driveline N. Am., Inc.*, 337 F.R.D. 479, 485 (M.D.N.C. 2020); *Vazquez-Aguilar v. Gasca*, 477 F. Supp. 3d 418, 421 (E.D.N.C. 2020); *O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 604 (S.D. W. Va. 2020); *Graham v. Hall's S. Kitchens, LLC*, 331 F.R.D. 619, 621 (D.S.C. 2018); *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 368 (N.D.W. Va. 2012); *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 298 (W.D.N.C. 2013); *Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009). In the first stage, usually

initiated pre-discovery and often "referred to as the 'notice stage,' the court makes a 'threshold determination of whether the plaintiffs have demonstrated that potential plaintiffs "are similarly situated," such that court-facilitated notice to putative class members would be appropriate.'" *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 306 (D. Md. 2014) (quoting *Syrja*, 756 F. Supp. 2d at 686).  If the Court determines the potential plaintiffs are "similarly situated," the action is conditionally certified and court-approved notice is sent to potential opt-in plaintiffs.  *See id.*  In the second stage, which typically follows the conclusion of discovery and begins with a motion for decertification, "the court engages in a more stringent inquiry to determine whether the plaintiff class is [in fact] 'similarly situated' in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action."  *Syrja*, 756 F. Supp. 2d at 686 (quoting *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007)).

At the conditional certification stage, the Court conducts a "modest inquiry" and "make[s] a threshold determination whether the class is similarly situated."  *Lancaster*, 2020 WL 5500227, at *2–3.  In making that determination, the Court considers whether the plaintiffs and potential plaintiffs had similar job responsibilities and whether they were victims of the same unlawful policy.  *Blake v. Broadway Servs., Inc.*, No. CCB-18-86, 2018 WL 4374915, at *3 (D. Md. Sept. 13, 2018).  The Court may grant conditional certification if there are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *Lancaster*, 2020 WL 5500227, at *3 (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)); *see also Montoya v. S.C.C.P. Painting Contractors, Inc.*, No. CCB-07-455, 2008 WL 554114, at *3 (D. Md. Feb. 26, 2008) ("[I]f all the employees were wrongly treated in the same way, this should be a factor in favor of a similarly situated finding."); *Marroquin v. Canales*, 236 F.R.D. 257, 260 (D. Md. 2006) ("[P]otential plaintiffs are 'similarly situated' when

they together were victims of a common policy or scheme or plan that violated the law.").  All that is required at the initial certification stage is some evidence of "a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." *Blake*, 2018 WL 4374915, at *3 (quoting *Shaver v. Gills Eldersburg, Inc.*, 2015 WL 5897463, at *9 (D. Md. Oct. 6, 2015)).

When deciding a motion for conditional certification, the Court considers the "substantial allegations" in the complaint and any affidavits or declarations. *Lancaster*, 2020 WL 5500227, at *2–3.  The plaintiff must provide more than "vague allegations with meager factual support" to show the potential plaintiffs are similarly situated. *Id.* at *3.  This Court has granted conditional certification based on "affidavits containing reports of statements by supervisors, which are not necessarily hearsay, as well as hearsay statements, such as those made by co-workers." *Id.* (citing, *e.g.*, *Montoya*, 2008 WL 554114, at *3; *Marroquin*, 236 F.R.D. at 260; *Robinson v. Empire Equity Grp., Inc.*, No. WDQ-09-1603, 2009 WL 4018560, at *3 (D. Md. Nov. 18, 2009)).

At this stage, the Court recognizes that "the record is sparse" and applies a relatively lenient standard. *Id.*  This lenient approach is necessary "to be consistent with the FLSA's purposes of promoting efficient joint adjudication of claims, lowering the costs of litigation to employee plaintiffs, and accounting for employees' natural reluctance to challenge an employer." *Id.* (citing *Hoffman–La Roche*, 493 U.S. at 170).

Defendants ask this Court to break from 20 years of precedent applying the two-stage certification process in FLSA cases and instead follow the approach adopted earlier this year by the Fifth Circuit in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).  In *Swales*, the Fifth Circuit rejected the two-stage approach to collective action certification.  The

6

Court recognized "[t]he trial court's notice-giving role is pivotal to advancing the goals and evading the dangers of collective actions," *id.* at 435, but nonetheless found that the "amorphous and ad hoc [two-step certification] test provides little help in guiding district courts in their notice-sending authority," *id.* at 440.   The Court observed that "nothing in the FLSA, nor in Supreme Court precedent interpreting it, requires or recommends (or even authorizes) any 'certification' process."  *Id.* at 440.  It held that, rather than adhere to a test for conditional certification, the district court should determine preliminarily "what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated'" and then allow relevant, preliminary discovery "to determine if and when to send notice to potential opt-in plaintiffs."  *Id.* at 441.  This approach, the Court held, "aids the district court in deciding whether notice is necessary" and "ensures that any notice sent is proper in scope—that is, sent only to potential plaintiffs."  *Id.* at 442.

This Court declines the defendants' invitation to depart from the two-stage certification process.[3]  The Fifth Circuit decision in *Swales* is not binding on this Court.  Moreover, the facts that gave rise to the Fifth Circuit's rejection of the two-stage certification approach are quite different than the facts here.  When the district court in *Swales* was presented with a motion for notice and conditional certification, the parties already had engaged in substantial discovery.  In opposing the motion, the defendant, a trucking transportation company, presented evidence that

---

[3] The two-stage approach to certification of collective FLSA actions has been widely adopted in courts outside the Fourth Circuit.  *See, e.g.*, *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008); *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 800 (S.D. Tex. 2010); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 890–91 (N.D. Iowa 2008); *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007); *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006); *Felix De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 662 (E.D. Pa. 2001); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 358–61 (D.N.J. 1987).

the plaintiffs and potential opt-in plaintiffs, former and current truck drivers, were independent contractors and argued that the application of the "economic-realities test" for whether the plaintiffs were employees or independent contractors "would require a highly individualized inquiry" that would "counsel[] against certification." *Id.* at 438.  The district court believed it could not consider evidence "related to the economic-realities test at the pre-notice stage because the test was a 'merits issue' to be dealt with after discovery was complete." *Id.*  The court recognized that the plaintiffs may not ultimately be "similarly situated" because "each plaintiff would have to present different facts under the economic-realities test," but nonetheless conditionally certified a collective of "potentially thousands" of truck drivers. *Id.*  The district court *sua sponte* certified its decision for interlocutory appeal. *Id.* at 439.  On appeal, the Fifth Circuit held that the district court erred by failing to "consider the evidence relating to this threshold question [of how much control the employer had over the plaintiffs] in order to determine whether the economic-realities test could be applied on a collective basis." *Id.* at 442.

None of these facts is present here.  While plaintiffs allege in their complaint that defendants mischaracterized them as independent contractors, defendants do not argue that these allegations require the Court to engage in a highly individualized analysis to determine whether each plaintiff is a covered employee.  Unlike the district court in *Swales*, this Court can determine from the allegations, declarations, and deposition testimony of E&R's office manager whether plaintiffs and potential plaintiffs are "similarly situated" for conditional certification purposes and whether to send notice of this action to potential opt-in plaintiffs.  Therefore, the Court finds that following the two-stage certification process here will promote the efficient adjudication of claims and lower the costs of litigation for the plaintiffs. *See Hoffman–LaRoche*, 493 U.S. at 170–71.  In this case, conditional certification is a "useful case management tool." *Myers v. Hertz Corp.*, 624

F.3d 537, 555 n.10 (2d Cir. 2010) ("certification is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful case management tool for district courts to employ in appropriate cases").

### B. "Similarly Situated" Potential Plaintiffs

Plaintiffs have made a threshold showing that the potential plaintiffs are "similarly situated" employees.  Plaintiffs and potential plaintiffs were hourly employees in the commercial construction division of E&R.  They regularly worked more than 40 hours per week, and defendants did not compensate them at one and a half times their regular rate for the overtime hours they worked.  In addition, defendants did not compensate them for all hours worked each day.   Plaintiffs proffer evidence of a policy pursuant to which E&R shaved time off plaintiffs' daily timecards, resulting in hours of uncompensated time.  Defendants argue against conditional certification because the four named plaintiffs did not work for E&R at the same time, worked different hours, kept their time differently, and worked on different teams and for different supervisors.  ECF 47, at 4.  While there may be minor differences in job assignments, hours, and supervisors among the plaintiffs and potential plaintiffs, these differences are immaterial because, according to E&R's office manager, E&R treated all hourly employees in the commercial division the same for purposes of wages, hours, and payroll.[4]  ECF 38-1, at 104:3–20, 112:22 – 113:3,

---

[4] Defendants do not dispute that plaintiffs and potential plaintiff were manual laborers, paid by the hour, who worked in E&R's construction division.  Defendants also do not dispute that the hourly employees were treated the same in terms of how they were paid.  That one laborer operated heavy machinery at one job site and another shoveled asphalt at another job site under a different supervisor does not render them dissimilar for purposes of conditional certification.  *See Robinson v. Empire Equity Grp., Inc.*, No. WDQ-09-1603, 2009 WL 4018560, at *2 (D. Md. Nov. 18, 2009) (quoting *Yeibyo v. E–Park of DC, Inc.*, No. DKC-07-1919, 2008 WL 182502, at *7 (D. Md. Jan.18, 2008)); *see also Blake*, 2018 WL 4374915, at *3 ("[W]hile the employees' responsibilities on the job are important to this analysis, the touchstone inquiry is the potential plaintiffs' common relationship to the allegedly unlawful policy.").

121:18 – 122:7.   This uniform payment scheme and method, applied across the board to approximately 60 hourly workers in E&R's commercial construction division, establishes, at this stage, that plaintiffs and potential plaintiffs are similarly situated.

### C.  Scope of Class of Potential Plaintiffs

Plaintiffs request certification of a potential class of "hourly-paid workers that perform construction work" for E&R in its "commercial construction division for the three-year period preceding the entry of this [conditional certification] Order . . . ."  ECF 49, at 8, 11; *see* ECF 38-23 (proposed order).  Defendants argue that the statute of limitations should limit the period to only two years, not three, because plaintiffs did not sufficiently plead willfulness.  ECF 47, at 4–5.  They also argue the period should not extend to the date of the conditional certification order but should end on September 22, 2020, when plaintiffs filed suit.  *Id.*

### 1.  Length of Limitations Period

The statute of limitations for an FLSA claim depends upon whether the violation at issue was willful.  The limitations period is two years for non-willful violations and three years for willful violations.  *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015) (citing 29 U.S.C. § 255(a); *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011); *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011)).  A violation is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Negligence does not suffice.  *Calderon*, 809 F.3d at 130.  The employee bears the burden of establishing willfulness.  *Id.*

This Court applies a "lenient standard" to the pleading requirements for willfulness at this stage.  *Cummins v. Ascellon Corp.*, No. DKC-19-2953, 2020 WL 6544822, at *8–9 (D. Md. Nov.

6, 2020).   Of course, defendants may challenge the applicability of a three-year statute of limitations if they move to decertify the collective action.  *See id.* at *9.

Here, plaintiffs sufficiently allege a willful violation of the statute.  They allege that defendants had a policy or practice not to pay hourly employees for all hours worked or time and a half for overtime hours.  ECF 1, ¶¶ 39–40.  Plaintiffs also allege that defendants intentionally misclassified hourly employees whom they knew were employees as independent contractors to avoid paying them for all hours worked and time and a half for overtime hours.  ECF 1 ¶¶ 73–77.  And, they assert that defendants' failure to pay the statutorily-required wages was willful.  *Id.* ¶¶ 47, 52.   These allegations are sufficient to survive the lenient pleading requirement for willfulness at the conditional certification stage.  *See Cummins*, 2020 WL 6544822, at *8–9 (finding allegations that defendants knew or should have known that they were not paying employees the required wages were "enough to survive this lenient standard to ensure that otherwise valid claims are not lost to time because of a lack of notice").

Beyond the complaint, plaintiffs offer evidence that defendants recorded when plaintiffs arrived and departed the worksites and tallied their hours in a way that shaved 15 to 60 minutes off the hours worked each day.  ECF 38, at 3–4 (citing ECF 38-1, at 34:9-34:17, 42:19-42:22; ECF 38-6 – 38–12).  They also offer evidence that defendants paid them for fewer than the already-reduced hours recorded on their time sheets.  ECF 38-1, at 55:2–17, 113:9 – 114:16, 125:10 – 126:15.  This evidence bolsters support for a three-year conditional certification period.  *See Wolfe v. AGV Sports Grp., Inc.*, No. CCB-14-1601, 2014 WL 5595295, at *2 (D. Md. Nov. 3, 2014) (defendants' failure to keep accurate time records was evidence of willfulness).

### 2.   End of Limitations Period

Defendants insist that the Court must limit potential plaintiffs to those who worked for defendants before August 2020, when the last named plaintiff stopped working for defendants, or before September 22, 2020, the date plaintiffs filed suit.  ECF 47, at 5, 9.  Defendants do not cite any caselaw in support of their position.  Plaintiffs argue that the period should extend to the date the Court issues the certification order, as this Court has done in other FLSA collective actions.  ECF 49, at 8 (citing *Ware v. AUS, Inc.*, No. RDB-16-3909, 2017 WL 1354143, at *3 (D. Md. Apr. 13, 2017); *Mendoza v. Mo's Fisherman Exch., Inc.*, No. ELH-15-1427, 2016 WL 3440007 (D. Md. June 22, 2016); *Banks v. Wet Dog Inc.*, No. RDB-13-2294, 2015 WL 433631 (D. Md. Feb. 2, 2015)).

The Court agrees with plaintiffs that the conditional certification period should extend to the date of the conditional certification order.  In the cases plaintiffs identified, this Court conditionally certified classes that included employees who worked for defendants after the named plaintiffs' employment ended and/or after the named plaintiffs filed suit.  In *Ware* and *Mendoza*, the Court conditionally certified a class that included all employees who worked for the defendants during the three-year period before the certification order.  *Ware*, 2017 WL 1354143, at *4; *Mendoza*, 2016 WL 3440007, at *14.  The *Ware* Court rejected the defendants' argument that the proposed class should include only potential plaintiffs who worked for them during the approximately three-month period when the named plaintiff worked for them.  2017 WL 1354143, at *3.  It reasoned that, "[t]hrough two sworn affidavits, Plaintiff . . . made the requisite 'modest factual showing' that there exists a similarly situated class of potential plaintiffs who were subject to a common policy, scheme, or plan which may have violated the FLSA."  *Id.*  In *Banks*, also, the conditionally certified class included employees who worked for the defendants during a period

of time that extended to the certification order, although in that case, the plaintiffs worked for defendants "for varying periods" in the period of time designated for the potential class. 2015 WL 433631, at *1, *3. The *Banks* Court reasoned that "differences among the plaintiffs," such as "duration of tenure," were "minor inconsistencies [that did] not amount to a conclusion that Plaintiffs [we]re necessarily dissimilar." *Id.* at *3.

Likewise, here, the conditional certification period should extend to the date of the conditional certification order. Plaintiffs have alleged and offered evidence that, as late as August 2020, when the last plaintiff left the company, the defendants had a common unlawful policy of not paying hourly construction workers for overtime hours at the rate of one-and-one-half times their regular hourly rate or for all hours worked in a day. ECF 1, ¶¶ 39–40; ECF 38-1, at 104:3–20, 112:22 – 113:3, 121:18 – 122:7; ECF 38-2 – 38-12. Moreover, "the clear precedent of this Court is to look to the date of the granting of conditional collective action certification." *Lee v. Solar Energy World, LLC*, No. RDB-19-1993, 2021 WL 915287, at *5 (D. Md. Mar. 10, 2021); *see, e.g.*, *Baylor v. Homefix Custom Remodeling Corp.*, 443 F. Supp. 3d 598, 608 (D. Md. 2020) (conditionally certifying class of employees who worked during the three years before the order issued); *Mendoza v. Mo's Fisherman Exch., Inc.*, No. ELH-15-1427, 2016 WL 8669955, at *1 (D. Md. Oct. 14, 2016) (same); *see also, e.g.*, *Cockman v. Assignment Desk Works LLC*, No. 19-CV-3082-BHH, 2021 WL 1738509, at *5 (D.S.C. May 3, 2021) (same); *Salvo v. NightCap Inc. Food & Spirits*, No. 17-CV-1266, 2017 WL 10775587, at *2 (D.S.C. Dec. 1, 2017) (same).

### D.  Contents of Conditional Certification Notice

Defendants challenge the contents of the notice to potential plaintiffs. They contend the notice should inform potential plaintiffs that they could be liable for defendants' costs in defending the action and that they have the right to consult independent counsel. ECF 47, at 9–10.

13

The Court "has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, (1981)).  Such orders, including orders approving notice of conditional certification, should reduce "the potential for misuse of the class device, as by misleading communications." *Id.*  Court management over collective and class actions ensures that the notice process and other aspects of joinder are efficient, "orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id.* at 170–71.  And, "[b]y monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative" before the notice issues. *Id.* at 172.

Defendants have not identified any other case in which a court approved a conditional certification notice with the advisement that potential plaintiffs may be liable for defendants' costs in defending the action.  Nor do they explain how notifying potential plaintiffs about the small possibility that they might be liable for defendants' cost would advance the purposes of court-approved notice.  In fact, the requested language likely would deter potential plaintiffs from joining the lawsuit, which in turn would undermine, not advance, the purposes of a collective action and court-ordered notice.  *See id.* at 170–71.  Moreover, this Court has rejected similar requests in the past.  *E.g.*, *McFeeley v. Jackson St. Ent., LLC*, No. DKC-12-1019, 2012 WL 5928902, at *5 (D. Md. Nov. 26, 2012) ("Defendants will not be afforded the opportunity to notify potential plaintiffs that they might be responsible for counterclaims or other costs."); *Calder v. GGC-Baltimore, LLC*, No. BPG-12-2350, 2013 WL 3441178, at *3 (D. Md. July 8, 2013) (citing *McFeeley*).  Therefore, the notice need not include language about potential liability for defendants' costs.

Defendants also insist that the notice should inform potential plaintiffs that they have the right to seek independent counsel.  ECF 47, at 10.  Plaintiffs argue the proposed notice is sufficient because it informs potential plaintiffs that, if they do not opt in, they "retain [their] legal rights to bring a separate suit against the Defendants for unlawful wage/hour violations."  ECF 49, at 10 (quoting ECF 38-21, at 2).  They also observe that the notice accurately states that if the potential plaintiffs "choose to join this suit, [they] agree to be represented by the named Plaintiffs through their attorneys . . . ."  *Id.*

Defendants, again, cite no authority supporting their request to include in the notice an advisement that potential plaintiffs have the right to seek independent counsel.  Plaintiffs cite an out-of-district case in which the court found the requested language "confusing and unnecessary because it is at odds with the purpose of the notice which is to provide the potential opt-in plaintiffs with an opportunity to join *this* class action and not initiate a new action."  *Stephens v. Sopapillas, LLC*, No. 18-296, 2019 WL 1460878, at *6 (M.D. Tenn. Apr. 2, 2019).  While the Court agrees the purpose of the notice is to provide potential plaintiffs an opportunity to join this action, not to initiate a new action, clarifying their right to bring a separate action with counsel of their choice will not cause confusion.  Therefore, after the sentence advising employees they retain their legal right to bring a separate lawsuit, the notice shall say:  "If you choose to bring your own action against the Defendants, you may hire your own attorney and enter into a separate fee arrangement directly with your own attorney."  *See McCoy v. Transdev Servs., Inc.*, No. DKC-19-2137, 2020 WL 2319117, at *6 (D. Md. May 11, 2020) (concluding that this language satisfied defendant's request "for 'language advising potential plaintiffs of their right to join suit with their own attorney'").

Defendants' requests to revise the notice are denied.  The Court finds the proposed notice, as revised, is sufficient.[5]  Plaintiffs shall revise the notice accordingly.

## III.    Motion to Amend

Plaintiffs sought leave to amend the complaint to add five opt-in plaintiffs as named plaintiffs, to augment and revise their allegations based on discovery to date, and to add "a Rule 23 Class Action pursuant to the Maryland Wage and Hour Law, Maryland Wage Payment and Collection Law and Maryland Workplace Fraud Act[] that relates back to the date of the filing of this lawsuit."  ECF 51, at 2.

Plaintiffs filed their motion for leave to amend the complaint on August 31, 2021, two days before the deadline for filing a motion to amend and join new parties.  ECF 45, 46, 51.  Because plaintiffs' motion to amend the complaint was filed before the deadline for filing a motion to amend, the relaxed standard of Rule 15, not the good cause standard of Rule 16, applies.  *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (noting that, while "Rule 15(a) provides that leave to amend 'shall be freely given when justice so requires[,]' . . . after the deadlines provided by a scheduling order have passed, the [Rule 16(b)] good cause standard must be satisfied to justify leave to amend the pleadings").

---

[5] Plaintiffs agree that the language regarding contact information for potential plaintiffs "is not a model of clarity," and they propose revised language.  ECF 49, at 11.  The Court adopts plaintiffs' proposed revision, as follows:

> **IT IS FURTHER ORDERED** that Defendants shall produce, within seven (7) days of this Order, a computer readable list of hourly-paid workers that performed construction work for E&R Services, Inc.'s commercial construction division for the three-year period preceding the entry of this Order, which shall include the first and last name of each person who held such a position, the position(s) held, dates of employment, last known mailing address, and email address ("contact information").

Pursuant to Rule 15, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend should only be denied when 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 217–18 (4th Cir. 2019) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

Defendants argue that adding the opt-in plaintiffs as named plaintiffs would be futile because the two-year statute of limitations bars some of their claims. ECF 58, at 3. As discussed above, because plaintiffs have sufficiently alleged willfulness, they may allege statutory violations within a three-year limitations period. Therefore, this amendment is not futile.[6]

Defendants also contend that adding a Rule 23 class action would be futile. ECF 58, at 4. They insist that the number of employees is too small to satisfy the numerosity requirement of a class action and that the commonality requirement cannot be met. *Id.*

Pursuant to Rule 23(a), among other requirements, a class must be "so numerous that joinder of all members is impracticable," and there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(1)–(2). The Fourth Circuit has observed that "[n]o specified number is needed to maintain a class action." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (quoting *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967)). As guidance, the Court noted that "a class that encompasses fewer than 20 members will likely not be certified . . . while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *Id.* (quoting 1 *Newberg on*

---

[6] Defendants argue that some of the new plaintiffs' claims fall outside a three-year statute of limitations. ECF 58, at 3. Even so, plaintiffs may allege the time periods in which each employee worked. The extent of any liability will be determined at a later date.

*Class Actions* § 3:12 (5th ed. 2021)).  Additionally, when a proposed class would have 20 to 39 members, the district court should consider "'all the circumstances of the case . . .' in evaluating the impracticability of joinder."  *Id.* (quoting *Ballard v. Shield of S.W. Va., Inc.*, 543 F.2d 1075, 1080 (4th Cir. 1976)).  As for commonality, "although the rule speaks in terms of common questions, "what matters to class certification . . . is . . . the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Peters v. Aetna Inc.*, 2 F.4th 199, 242 (4th Cir. 2021) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (first alteration in original) (citation and internal quotation marks omitted)).

Plaintiffs may satisfy Rule 23's numerosity and commonality requirements.  Before they filed their motion for leave to amend, plaintiffs described a class of about 60 workers.  ECF 38, at 2.  In their proposed amended complaint, they claim the class "consists of all workers who have performed construction work for E&R Services[,] Inc.'s commercial construction division at any time during the period beginning three years from the date of the commencement of this lawsuit through the date of class certification," and includes "at least two hundred (200) persons." ECF 51-1, ¶¶ 88, 91.  Defendants describe themselves as "a small Maryland family-owned business" and state they employed about 60 construction workers in the commercial division on any given day and that there was turnover.  ECF 58, at 4; ECF 38-1, at 21:12–22:10.  Thus, based on plaintiffs' allegations and defendants' testimony, joinder would be impracticable and plaintiffs would meet the numerosity requirement.  *See In re Zetia*, 7 F.4th at 234.  Further, defendants provide no support for their assertion that plaintiffs cannot establish commonality.  There likely is commonality because plaintiffs have alleged a class of construction workers in defendants' commercial construction division who performed manual labor and did not receive their statutorily-required wages.  Therefore, amendment to add a Rule 23 class action is not futile.

Defendants also argue that adding the opt-in plaintiffs and a Rule 23 class action would be prejudicial because discovery has closed and the parties would need to brief the issue of class certification.  ECF 58, at 3, 4.  In addition, they argue that they are prejudiced by plaintiffs' delay in bringing a Rule 23 class action.  "Delay alone is an insufficient reason to deny leave to amend.  Rather, the delay must be accompanied by prejudice, bad faith, or futility."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509–10 (4th Cir. 1986)).  Plaintiffs filed their motion to amend two days before the discovery deadline.  ECF 45, 46.  Dispositive motions have not been filed, trial has not been set, and a motion to amend the scheduling order is pending.  Further, the proposed additional named plaintiffs opted in several months before the September 2, 2021 fact discovery deadline, allowing defendants ample time to pursue discovery regarding their claims.  ECF 19, 41–44; *see* ECF 45, 46.  Finally, any class action complaint raises the issue of class certification; the need to brief the issue is not a basis for barring such a claim.  Accordingly, the Court will not deny leave to amend based on prejudice to the defendants.  Plaintiffs' motion for leave to amend is granted.

## IV.    Other Pending Motions

Also pending are plaintiffs' motion to amend the scheduling order and compel defendants' responses to their requests for time and payment records for the opt-in plaintiffs.  ECF 48, 50.  Defendants argued in correspondence to the Court and on a September 14, 2021 call with the Court that plaintiffs were not entitled to discovery regarding the opt-in plaintiffs until after certification.  ECF 53.  Now that the Court has granted plaintiffs' motion for notice to potential plaintiffs and conditional certification, defendants' argument in opposition is moot.  Plaintiffs' request to compel discovery is granted.  Plaintiffs' motions to amend the scheduling order is granted as well.  The parties shall meet and confer and propose an amended scheduling order by January 17, 2022.

Plaintiffs ask the Court to toll the statute of limitations from the June 4, 2021 filing of their motion for notice and conditional certification until the date notice issues.  ECF 59.  Defendants do not oppose this motion.  Equitable tolling is appropriate when there are "extraordinary circumstances" that are "beyond [plaintiffs'] control or external to [their] own conduct" and that "prevented [them] from filing on time."  *See Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003).  The six-month delay between the filing of the motion for notice and conditional certification and this decision granting the motion was outside the potential plaintiffs' control.  Therefore, the motion for equitable tolling is granted in part.  *See Chapman v. Ourisman Chevrolet Co.*, No. AW-08-2545, 2009 WL 10685449, at *4 (D. Md. Apr. 14, 2009) (citing *Rouse* and granting motion to toll the statute of limitations for the four-month period in which motion to certify was pending).  The statute of limitations for any opt-in plaintiffs is tolled from June 4, 2021 through the date of the conditional certification order.

## V.    Conclusion

Plaintiffs' motion for notice to potential plaintiffs and conditional certification, ECF 38, is granted.  Plaintiffs' unopposed motion for equitable tolling, ECF 59, is granted in part.  The statute of limitations is tolled from June 4, 2021 through the date of the conditional certification order.  The Court conditionally certifies an FLSA collective action of all hourly-paid workers who performed construction work for E&R Services, Inc.'s commercial construction division between December 23, 2018 and the date of this memorandum opinion and accompanying order.  Additionally, plaintiffs' motion for leave to file an amended complaint, ECF 51, is granted, and the amended complaint, ECF 51-1, is accepted as filed.

Plaintiffs' request to compel discovery, ECF 48, is granted.  Defendants shall produce the requested time and payment records for the opt-in plaintiffs by January 14, 2022.  Plaintiffs'

motion to amend the scheduling order, ECF 50, is granted.  The parties shall submit a proposed amended scheduling order for the remainder of discovery by January 17, 2022.

A separate Order will issue.


Date:   December 23, 2021                              /S/
                                                      Deborah L. Boardman
                                                      United States District Judge