IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| OSCAR SANTOS, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> E&R SERVICES, INC., *et al.*, <br>     *Defendants* | Civil Action No. ABA-20-2737 |
| JUAN CRUZ CANO, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> E&R SERVICES, INC., *et al.*, <br>     *Defendants* | Civil Action No. ABA-22-3330 |

**MEMORANDUM OPINION**

Pending before the Court is the joint motion for settlement approval in two related collective action cases filed pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, ("FLSA") and analogous state law. Twenty-five opt-in plaintiffs (collectively, "Plaintiffs") request the Court's approval of their settlement agreement, as well as dismissal of their claims against E&R Services, Inc. and its owner, Emilio Rodriguez (collectively, "E&R" or "Defendants"). *See* ECF No. 162 ("Jt. Mot."). Because the proposed settlement terms are fair and reasonable, and resolve a *bona fide* dispute between the parties, and because the requested award of attorneys' fees and costs is reasonable, the motion will be granted.

**I.   BACKGROUND**

E&R is a residential and commercial construction company based in Prince George's County, Maryland. *Id.* at 3. Plaintiffs allege that, between 2016 and 2020, they worked for

Defendants as hourly paid construction employees assigned to road projects throughout the state. *Id*. at 3-4. In September 2020, Oscar Santos, Otoniel Morales, and Isidro Flores, the original named plaintiffs in this action, filed suit against Defendants on behalf of themselves and others similarly situated, alleging that E&R withheld straight time wages, failed to pay overtime compensation, maintained a policy of recording reduced working hours, and willfully misclassified its employees as independent contractors. *Santos et al v. E&R Services*, 20-cv-2737-DLB ("*Santos*"), ECF No. 1. Based on these allegations, plaintiffs Santos, Morales, and Flores asserted claims under the FLSA, the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq*., the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq*., and the Maryland Workplace Fraud Act, Md. Code Ann., Lab. & Empl. §§ 3-901 *et seq*. *See id*.

The Court granted Plaintiffs' motions to file an amended complaint, and conditionally certify the case as a collective action. ECF No. 62. Plaintiffs' counsel also filed a separate suit against Defendants in December 2022, as counsel for a different group of individuals with identical claims. *Cano et al v. E&R Services*, 8:22-cv-03330-DLB ("*Cano*"). The parties of the consolidated cases engaged in three settlement conferences before reaching a settlement at the end of 2023. Twenty-five individuals comprise the named and opt-in plaintiffs: Fernando Alvarado, Jesus Segovia Espinoza, Julio Molanco Vasquez, Dionicio Jesus Pleites, Cliserio F Guzman, Pedro Antonio Flores Hernandez, Denis Moyses Romero, Essau Reyes, Juan Carlos Mendez, Mario Bautista, Oscar Santos, Otoniel Morales, Isidro Flores, Oscar Garcia, Alfonso Velazquez, Norman Velazquez De Los Angeles, Sadam Velazquez, Guadalupe Garcia Morales, Juan Cruz Cano, Carlos Balbuena, Daniel Cruz Cano, Jose Ivan Cruz Cano, Francisco Chub, Cristian Barragan Cruz, and Julian Ramirez. Jt. Mot. at 1.

The parties filed the now pending joint motion, along with a copy of their settlement agreement, in January 2024. *See* ECF No. 162-1 (the "Agreement"). The parties have also consented to proceed before a U.S. Magistrate Judge for purposes of approval of the settlement (and further proceedings, in the event any were to become necessary). *See* 28 U.S.C. § 636(c)(1).

The gross settlement amount is $360,000, including attorneys' fees and costs. *Id*. ¶ 1. Under the terms of the Agreement, Defendants will pay Plaintiffs $215,000 and Plaintiffs' counsel $145,000. *Id*. ¶ 2. Each plaintiff will receive two checks totaling the amount due individually. *Id*. ¶ 2(d). The settlement amount equates to "16.5% of each Plaintiff's total wages during the relevant lookback period." Jt. Mot. at 6. The three original named plaintiffs will also each receive a $5,091.06 service award. *See* Jt. Mot. at 6, ECF No. 162-2. The specific compensation each member of the collective will receive is set forth in Exhibit 2 of the parties' joint motion. ECF No. 162-2. The parties further propose that the Court retain jurisdiction for a limited time to supervise the payments and enforce the settlement terms. Agreement ¶ 13.

In exchange for those payments, Plaintiffs have agreed to a general release, set forth in section 4 of the settlement agreement. Agreement ¶ 4. That release extends to "any and all claims, demands, actions, causes of action, suits, damages, and losses, known or unknown, stemming from or relating to any actions or omissions occurring from the beginning of time through the effective date of this Agreement." *Id*. Plaintiffs expressly acknowledge the Agreement is legally binding. *Id*. ¶ 12. They further represent "that all terms are understood and that the execution of this Agreement is completely voluntary." *Id*. ¶ 16.

## II.   DISCUSSION

Congress enacted the FLSA to protect workers from "substandard wages and excessive hours" that resulted from unequal bargaining power between employers and employees. *See*

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To that end, the statute's provisions generally cannot be waived or modified. *See id.* at 707. Settlement of claims asserted under the FLSA are permitted, of course, provided that such a settlement either (a) is supervised by the Secretary of Labor or (b) "reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. 12-cv-1083-DKC, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

The Fourth Circuit has not established a definitive rubric for determining the propriety of an FLSA settlement, but district courts in this circuit have adopted the considerations set forth in the Eleventh Circuit's *Lynn's Food Stores* case. *See*, *e.g.*, *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407-08 (D. Md. 2014). Under this approach, the Court determines whether a settlement provides "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355.

The first step of the analysis requires the Court to confirm that there are FLSA issues "actually in dispute." *Id.* at 1354. To determine whether a *bona fide* dispute exists, the Court reviews the pleadings, the recitals in the Agreement, and other court filings in the case. *See Duprey*, 30 F. Supp. 3d at 408 (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08–1310, 2009 WL 3094955, at *16-17 (E.D. Va. Sept. 28, 2009)). Next, courts assess the fairness and reasonableness of a settlement itself, which involves considering all relevant factors, including:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff[]; (5) the opinions of class counsel . . . ; and (6) the probability of plaintiff['s] success on the merits and the amount of the settlement in relation to the potential recovery.

*Yanes v. ACCEL Heating & Cooling, LLC*, No. 16-cv-2573-PX, 2017 WL 915006, at *2 (D. Md. Mar. 8, 2017) (quoting *Lomascolo*, 2009 WL 3094955, at *10). These factors are usually satisfied if there is an "assurance of an adversarial context," and the employee is "represented by an attorney who can protect [his or her] rights under the statute." *Duprey*, 30 F. Supp. 3d at 408 (quoting *Lynn's Food Stores*, 679 F.2d at 1354). Finally, the Court evaluates the reasonableness of any attorneys' fees awarded in connection with the settlement of FLSA claims. *Lane v. Ko-Me, LLC*, No. 10-cv-2261-DKC, 2011 WL 3880427, at *2 (D. Md. Aug. 31, 2011).

    A.    *Bona Fide* Dispute

A review of the relevant pleadings and filings of this case confirms that there is a *bona fide* dispute. The parties stipulate to the existence of such a dispute in their joint motion. *See* Jt. Mot. at 6, 8. They are genuinely at odds over several issues. Plaintiffs claim that Defendants willfully maintained a policy of withholding earned pay from hourly employees and refusing to pay time and a half for overtime hours. *Id*. at 4. Plaintiffs also allege that Defendants intentionally misclassified hourly employees as independent contractors. *Id*. Defendants counter that "all Plaintiffs were paid all of the compensation due for all of the hours worked," *id*. at 5, and expressly deny any wrongful conduct. *See* Agreement ¶ 7. Liability disagreements turning on the hours an employee has worked can be enough to establish a *bona fide* dispute. *See*, *e.g.*, *Fernandez v. Washington Hospitality Services, LLC*, No. 23-cv-839-AAQ, 2023 WL 4627422, at *2 (D. Md. Jul. 19, 2023) ("Disagreements over rates of pay and hours worked can constitute *bona fide* disputes over a defendant's liability."); *see also Duprey*, 30 F. Supp. 3d at 408 (finding *bona fide* dispute based on litigants' disagreement over plaintiff's "rate of pay and hours worked"). Given Defendants' denial of the allegations and the parties' overall disagreement, there is a *bona fide* dispute under the FLSA.

### B. Fairness and Reasonableness of Settlement Terms

The proposed settlement appears to be a fair and reasonable compromise of the parties' *bona fide* dispute. The parties reached a settlement after the conclusion of discovery, including "extensive written discovery and depositions." Jt. Mot. at 9. Accordingly, they have "had sufficient opportunity to obtain and review evidence, to evaluate their claims and defenses, and to engage in informed arms-length settlement negotiations." *Melendez v. Declercq*, Inc., No. 14-cv-2247-PJM, 2016 WL 3387235, at *4 (D. Md. Jun. 14, 2016). Termination of the proceedings based on the parties' mutual interest in avoiding the time, expense, and risk of continuing this action is reasonable, and weighs in favor of settlement. *See Saman*, 2013 WL 2949047, at *4 (finding settlement fair and reasonable based in part on the litigants' desire "to avoid the costs of formal discovery, dispositive motions, and a possible trial").

Plaintiffs are also represented by competent and knowledgeable attorneys, who have over forty years of combined legal experience, substantially devoted to employment law. Jt. Mot. at 12, ECF Nos. 162-3, 162-4. *See Hackett v. ADF Rest. Investments*, 259 F. Supp. 3d 360, 366 (D. Md. 2016) (approving settlement based in part on counsel's asserted experience of litigating numerous lawsuits involving wage and hour violations). Counsel for both sides believe the settlement is fair and reasonable, Jt. Mot. at 11, and there is nothing to suggest that this settlement is the product of fraud or collusion. *See Lomascolo*, 2009 WL 3094955 at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."). These circumstances all weigh in favor of approving the settlement.

As for the relationship between Plaintiffs' potential and actual recovery, the parties vigorously dispute what defendants' potential liability (if any) would have been if the case had proceeded to trial or further. Jt. Mot. at 6, 8. Both sides represent that they have considered the

strength of their respective arguments, and are satisfied with the settlement amount, distribution method, and disbursement schedule as provided in the Agreement. *Id*. at 6. The service fee awarded to the three original named plaintiffs, which equates to less than 5% of the total settlement amount, also is appropriate, considering their involvement in initiating and advancing the lawsuit. *See, e.g., Alloways v. Cruise Web, Inc*., No. 17-cv-2811-CBD, 2019 WL 1902813, at *14 (D. Md. Apr. 29, 2019) (approving incentive award based on certain plaintiffs' participation in the proceedings from its commencement, and the "relative modesty" of the payment). Plaintiffs will otherwise be treated equally, with each plaintiff collecting an amount equal to 16.5% of his individual wages earned between 2017 and 2022, which the parties refer to as the "lookback period." Jt. Mot. at 6. A favorable verdict conceivably could have resulted in a larger award, but that possibility alone is not enough to render this settlement unfair. *See Strother v. OS Restaurant Services, LLC*, No. 22-cv-0845-AAQ, 2023 WL 1769733, at *4 (D. Md. Feb. 3, 2023) ("[T]here is also a possibility that Plaintiff is entitled to a lesser amount of damages or no damages at all. Thus, the probability of full recovery is not so great as to outweigh the benefits of settlement in this case.") (quoting *Kuntze v. Josh Enterprises, Inc*., 2019 WL 2179220, at *3 (E.D. Va. May 20, 2019)). Given the disputed material facts and risks of litigation, the Court is convinced that the settlement amount "reflects a reasonable compromise over issues actually in dispute." *Lomascolo*, 2009 WL 3094955, at *8.

Although general release language can render a FLSA settlement agreement unreasonable, *see Duprey*, 30 F. Supp. 3d at 410 (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010)), the parties' release in this case is appropriate under the circumstances. Plaintiffs will be "compensated reasonably for the release executed," particularly in light of the *bona fide* disputes in this case, and the Court need not consider the

7

"reasonableness of the settlement as to the non-FLSA claims." *Id*. *See also Gue v. Shree Pashuapati Corp.*, No. 21-cv-44-DKC, 2021 WL 2414866, at *1 (D. Md. June 14, 2021), at *1 (approving settlement agreement despite inclusion of general release language); *Lee v. Ex-Exec Lube, LLC*, No. 19-cv-3195-DLB, 2021 WL 1117274, at *1 (D. Md. Mar. 24, 2021) (same).

Upon consideration of all the relevant factors, the Court finds the settlement to be fair and reasonable.

### C.    Attorney's Fees

The last step of the settlement analysis requires evaluating the reasonableness of the attorneys' fees and costs awarded in connection with the settlement. *Lane*, 2011 WL 3880427, at *2. The Court determines the reasonableness of attorneys' fees using "the principles of the traditional lodestar method as a guide." *Id.* at *3 (quoting *Poulin v. General Dynamics Shared Resources, Inc.*, No. 3:09–cv–00058, 2010 WL 1813497, at *1 (W.D. Va. May 5, 2010)). The lodestar amount is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Under the lodestar approach, an hourly rate "is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Duprey*, 30 F. Supp. 3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)). This Court maintains rough guidelines regarding appropriate hourly rates in Appendix B to its Local Rules, although higher rates can be reasonable. *See* U.S. District Court, District of Maryland, Local Rules (D. Md. Jul. 2023).

The Fourth Circuit addressed specific factors district courts should consider in determining the reasonableness of attorneys' fees in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978):

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226 n.28.

Plaintiffs' counsel, James Rubin and Aaron Uslan, represent that they have collectively performed approximately 580 hours of work in this case, for a lodestar amount totaling almost $190,000, comprised as follows (Jt. Mot at 12-13):

| Attorney | Hours | Standard rate | Total lodestar |
| --- | --- | --- | --- |
| James Rubin | 230 hours | $400 | $92,000 |
| Aaron Uslan | 350 hours | $275 | $96,250 |
| | | Total | $188,250 |

In its rulings on other matters of this case, the Court previously determined that counsel's billing rates are reasonable. *See* ECF Nos. 88, 124. Those rates are within the range presumed reasonable in Appendix B of this Court's Local Rules. *See Saman*, 2013 WL 2949047, at *7 ("[A]ny request for attorneys' fees must comport with the requirements and guidance set forth in Local Rule 109 and Appendix B to the Local Rules.").

As for the hours comprising the lodestar, Plaintiffs' counsel has not submitted hourly time records, as is typical in other cases, and as Plaintiffs' counsel did in support of prior requests for fee awards in this case, *see* ECF Nos. 75, 114. Instead, in support of the hours component of the lodestar analysis, Plaintiffs rest on declarations of Mr. Rubin and Mr. Uslan, attesting to the total number of hours they each spent representing Plaintiffs in the *Santos* and *Cano* cases. ECF Nos. 162-3, ¶ 8 (Mr. Rubin: "As of the date the parties settled this matter, I

9

billed 229.3 hours in these two cases"); ECF No. 162-4, ¶ 7 (Mr. Uslan: "I billed a cumulative of 352.25 hours on both the Santos and Cano matters.").

In other circumstances, that level of generality may not have been sufficient. *See Hackett*, 259 F. Supp. 3d at 368 ("Plaintiffs are expected to provide all documentation necessary for the Court to make a lodestar determination as to the hours reasonably expended, including but not limited to declarations establishing the hours expended by counsel, broken down for each task performed.") (citing *Saman*, 2013 WL 2949047, at *7); *see also Lane*, 2011 WL 3880427, at *3 ("[P]arties seeking approval of an award of attorneys' fees must provide the court with the means for making this assessment."). But here, the record is adequate for the Court to conclude that the fee award is reasonable. At $145,000, Mr. Rubin and Mr. Uslan are already accepting substantially less than their lodestar. This is in contrast to other cases where the fee award reflects a multiplier above the lodestar. *See Hackett*, 259 F. Supp. 3d at 369 (lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee) (citing *Singleton v. Domino's Pizza*, LLC, 976 F. Supp. 2d 665, 689 (D. Md. 2013)). The extensive litigation history of this case, the number of clients that counsel represented, and the nature of the claims and documentary investigation required—as well as the fact that the total hours render the lodestar far above the point that would begin to correspond with an unreasonable multiplier—all render reasonable the number of hours expended. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) (explaining that, in deciding what attorney's fees to award, courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time"). For these reasons, the attorneys' fees agreed to as part of the settlement are reasonable.

Finally, Mr. Rubin attests to incurring a total of $8,166.81 in costs for a class administrator, depositions, filing fees, service fees, and photocopies. ECF No. 162-3 ¶ 10. "Costs

that may be charged include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Trs. Of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Westland Fire Prot., Inc.*, No. 12-cv-1421-DKC, 2014 WL 824121, at *3 (D. Md. Feb. 28, 2014) (quoting *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)). These costs are reasonable as well.

Having considered the relevant factors, the Court concludes the standard for approval of the settlement is satisfied. The proposed settlement is a fair and reasonable resolution of a *bona fide* dispute. The attorneys' fees and costs are also fair and reasonable. The settlement will be approved, and the agreed-upon fees will be awarded in full.

### D. Retention of Jurisdiction

The Court lastly turns to the parties' request that the Court "retain jurisdiction over this case until all payments to Plaintiffs are made pursuant to the Settlement Agreement." ECF No. 162-5 at 2. This provision is acceptable. Under the terms of the Agreement, Defendants have agreed to issue payment within fourteen days of settlement approval, and the parties have agreed to file a notice of stipulated dismissal with prejudice within fifteen days of the last payment. *See* Agreement ¶¶ 2(b), 13. In short, the parties expect to seek dismissal with prejudice within thirty days of settlement approval. Given that the parties' request promotes both a smooth resolution of the action and judicial economy, this provision of the Agreement is reasonable and will be approved. *See*, *e.g.*, *Hernandez v. Microfit Auto Parts, Inc.*, No. 19-cv-0984-TDC, 2021 WL 1311579, at *5 (D. Md. Apr. 8, 2021) (approving an FLSA settlement agreement containing a continuing jurisdiction provision).

### III. CONCLUSION

For the reasons stated above, the parties' joint motion for final approval of settlement will be granted. A separate order will follow.


Date:   April 2, 2024                                     _____/s/_____
                                                          Adam B. Abelson
                                                          United States Magistrate Judge